RENDERED:  AUGUST 14, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1384-ME

J.P.                                                                                        APPELLANT

APPEAL FROM CALLOWAY FAMILY COURT
v.        HONORABLE SUSAN WESLEY MCCLURE, SPECIAL JUDGE
ACTION NO. 24-AD-00034

A.R.P., A MINOR CHILD;
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; AND S.J.P.                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, L. JONES, AND MOYNAHAN, JUDGES.

JONES, L., JUDGE:  J.P. (Father) appeals from the judgment of the Calloway

Family Court terminating his parental rights (TPR) to his minor daughter, A.R.P.[1]

By separate judgment in the same action, the Calloway Family Court also

---

[1] To protect the privacy of the minor child, we will refer to the child and her biological parents by their initials or "Father," "Mother," and "Child."

terminated the parental rights of S.J.P. (Mother).  Mother has not appealed that judgment. Having fully considered the briefs and the record, we affirm.

## I.        FACTUAL AND PROCEDURAL HISTORY

Child was born in 2013. Since her birth, the Cabinet received multiple reports containing allegations of sexual abuse, domestic violence, substance abuse, and mental health concerns.  Indeed, many of those reports involved the parents' making reports against each other.  Several Juvenile Dependency, Neglect, or Abuse (JDNA) petitions were also filed, usually by one parent against the other. However, the JDNA Petition leading to this TPR action was filed by the Cabinet on January 17, 2023.  In that Petition, the Cabinet alleged Child had tested positive for cannabinoids on a drug exposure test, and Father and Mother had tested positive for THC at their last drug screen.  Record (R.) at 358.  Furthermore, the JDNA Petition alleged Child was placed at risk of harm due to Father and Mother continuing to fight over her.

On January 30, 2023, the family court held a temporary removal hearing.  Following that hearing, the family court found "by [a] preponderance of the evidence[,] that there is reasonable cause to believe the child is at risk of harm if left in Mother and Father's care as a result of substance abuse issues[]" and placed Child with the Cabinet, but allowed both Father and Mother to exercise

supervised visitation.[2]  R. at 341-46.  The Cabinet was also ordered to facilitate a Comprehensive Assessment and Training Services (CATS) assessment for Father and Mother.  R. at 346.  On March 13, 2023, Child was placed in the custody of M.P., her adult half-brother, with supervised visitation by Father and Mother to occur at M.P.'s discretion with neither parent allowed to make disparaging remarks against the other.  R. at 338.  However, Mother and Father's behavior caused disruption to the placement of Child with M.P., and Child was returned to placement with the Cabinet three months later.  R. at 193.  Father and Mother negotiated respective case plans with the Cabinet and participated in the CATS assessment.

Father's case plan included the included the following: (1) Father would maintain a safe and stable home; (2) Father would maintain his Social Security Disability Income (SSDI) benefits;[3] (3) Father would complete the CATS assessment; (4) Father would cease speaking negatively about Mother when Child was present; (5) Father would not have drugs or alcohol in the home or around Child; (6) Father would complete a substance abuse assessment and follow all recommendations; (7) Father would complete a domestic violence or anger management assessment and follow all recommendations; (8) Father would

---

[2] Prior to the temporary removal hearing, Child had been in Father's custody.

[3] Father's sole source of income was SSDI benefits.

-3-

provide random drug screens at the Cabinet's request; and (9) Father would provide proof of attendance at two Alcoholics Anonymous or Narcotics Anonymous (AA/NA) meetings each week. While Father largely completed the tasks on his case plan, he did not implement the skills he was expected to learn from those tasks to remediate the circumstances that led to Child's removal and allow Child to return to his care. In particular, Father continued to disparage Mother in front of Child[4] during supervised visitation, and he displayed aggression towards Cabinet employees during supervised visits to the extent he was asked to leave visits twice, upsetting Child. Further, during visits, Child would demonstrate discomfort when Father touched her.

On May 9, 2024, following an adjudication hearing, the family court found both Mother and Father had abused and neglected Child, entering detailed findings of fact which relied heavily on the CATS assessment previously ordered. Specific to Father, the family court found Father had "substance abuse issues which affect his ability to parent and that the child has been psychologically harmed by [Father] continuously engaging in fighting with the child's [m]other which creates a toxic environment for the child to live in." R. at 218.

---

[4] Mother would likewise make disparaging comments about Father in front of Child.

On August 5, 2024,[5] the family court simultaneously entered a Disposition Order, Permanency Hearing Order, and Order Granting Waiver of Reasonable Efforts. Attached to those Orders were identical separate findings of fact. In those findings of fact, the family court noted Father "contin[ues] not to keep his hands off of the child even though she makes it clear it makes her uncomfortable"; Father "continues to show anger responses in front of the child"; Father "has not recognized and still does not acknowledge his role in why the child was removed"; "[t]he change in the child since being removed from the parents has been remarkable"; and at "[e]very visit, [Mother] and [Father] still cannot show what they have learned from the tasks on their case plans that they have actually completed." R. at 167-68. The sum effect of these orders was that Child would remain in Cabinet custody with Child's permanency goal being changed to adoption rather than return to parents. No appeal was taken from the underlying JDNA action.

On November 4, 2024, the Cabinet filed a Petition for TPR. Also in November 2024, Father's visits were suspended. After Father's visits were suspended he had no further contact with Child, nor did he send her any gifts, or provide any support for her benefit. While child support had been drawn from

---

[5] These three orders indicate they were entered on August 2, 2024, but were not signed by the family court judge until August 5, 2024.

Father's SSDI benefits, for some reason unclear to the record such support was interrupted or stopped.

The family court held a bench trial on the Petition on August 7, 2025.[6] At trial, the Cabinet called several of its workers who testified consistently with the facts set out, *supra*. Those Cabinet workers also testified that Child had been in an adoptive placement foster family for almost a year, Child was doing well in that placement, and the family planned to adopt Child.

The Cabinet also called Child's former and current therapists to testify.[7] The former therapist, who had seen Child until January 2025, testified that Child discussed being afraid following a specific visit where Father became aggressive. The former therapist also testified that she did not believe continued visitation with Father and Mother was in Child's best interest because Child felt forced to go to visitation and worried that she had to act a certain way around either parent. Child's present therapist at the time of the TPR hearing[8] likewise did not recommend Child have visitation with Father or Mother. In particular, the new therapist diagnosed Child with Reactive Attachment Disorder as the result of

---

[6] Trial was delayed in part because the underlying family court judge who heard the JDNA action recused herself on April 2, 2025. A special judge was assigned to hear the TPR trial.

[7] Child's former therapist testified in person while Child's current therapist testified via deposition.

[8] This therapist began treating Child in February of 2025.

serious emotional and social neglect in her natural parents' care. Given that diagnosis, the new therapist believed it would be detrimental for Child to interact with caregivers (*i.e.* Father and Mother) with whom she did not feel safe.

Father and Mother testified as well. While Mother's testimony largely concerned her own case plan, she testified that Father had confronted her outside the courtroom prior to the TPR hearing and taunted her during her testimony. Mother also testified that she believed it was in Child's best interest for Father's parental rights to be terminated. Father testified that he did not believe Child should have been removed from his custody. Father further acknowledged that his visits with Child did not go well and admitted his relationship with Mother was not healthy and likely had a negative effect on Child. Finally, Father admitted to taunting Mother prior to the TPR hearing, saying "I hope you're happy" prior to entering the courtroom.

On October 1, 2025, the family court entered an Order and Judgment terminating Father's parental rights as well as separate Findings of Facts and Conclusions of Law regarding its judgment terminating Father's parental rights.[9] The family court found Child to be an abused and neglected child by Father in the

[9] On the same day, the family court entered a similar judgment terminating Mother's parental rights and separate Findings of Fact and Conclusions of Law supporting terminating Mother's parental rights.

underlying JDNA case as well as in the present proceeding pursuant to KRS[10] 600.020(1)(a)4.,[11] KRS 600.020(1)(a)8.,[12] and KRS 600.020(1)(a)9.[13] The family court further found TPR was in Child's best interest. Finally, the family court found the existence of several statutory grounds required by KRS 625.090(2) for TPR, namely KRS 625.090(2)(e),[14] KRS 625.090(2)(g),[15] and KRS 625.090(2)(j).[16] From that judgment, Father made a timely appeal.

---

[10] Kentucky Revised Statutes.

[11] Father "[c]ontinuously or repeatedly [failed] or [refused] to provide essential parental care and protection for the child, considering the age of the child[.]"

[12] Father "[did] not provide the child with adequate care, supervision, food, clothing, shelter, and . . . medical care necessary for the child's well-being when financially able to do so or offered financial or other means to do so."

[13] Father "[failed] to make sufficient progress [towards] identified goals as set forth in the court-approved case plan to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining in foster care for fifteen (15) cumulative months out of forty-eight (48) months[.]"

[14] Father "for a period of not less than six (6) months, [had] continuously or repeatedly failed or refused or [had] been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child[.]

[15] Father "for reasons other than poverty alone, [had] continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there [was] no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]"

[16] "That the child [had] been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]"

**II.**  **STANDARD OF REVIEW**

KRS 625.090 governs TPR. Before parental rights may be terminated under that statute, the trial court must find by clear and convincing evidence that a tripartite test has been satisfied: "(1) the child is found or has been adjudged to be an abused or neglected child as defined in KRS 600.020(1); (2) termination of the parent's rights is in the child's best interests; and (3) at least one of the termination grounds enumerated in [KRS 625.090(2)(a)-(k)] exists." *Cabinet for Health and Fam. Servs. v. K.H.*, 423 S.W. 3d 204, 209 (Ky. 2014).

As observed in *M.E.C. v. Cabinet for Health and Family Services*, 254 S.W. 3d 846, 850 (Ky. App. 2008):

> [A]lthough termination of parental rights is not a criminal matter, it encroaches on the parent's constitutional right to parent his or her child, and therefore, is a procedure that should only be employed when the statutory mandates are clearly met. While the state has a compelling interest to protect its youngest citizens, state intervention into the family with the result of permanently severing the relationship between parent and child must be done with utmost caution.

Even so, "[b]ecause termination decisions are so factually sensitive, appellate courts are generally loathe [sic] to reverse them, regardless of the outcome." *D.G.R. v. Cabinet for Health and Fam. Servs.*, 364 S.W. 3d 106, 113 (Ky. 2012). Indeed, "[t]his Court's standard of review in a termination of parental rights action

is confined to the clearly erroneous standard in CR 52.01[17] based upon clear and convincing evidence[.]" *M.P.S. v. Cabinet for Human Resources*, 979 S.W. 2d 114, 116 (Ky. App. 1998).

In reviewing whether the trial court's factual findings are clearly erroneous, this Court looks at "whether or not those findings are supported by substantial evidence." *Moore v. Asente*, 110 S.W. 3d 336, 354 (Ky. 2003). Substantial evidence means "[e]vidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (internal quotation marks and citations omitted). "[T]he findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings." *M.P.S.*, 979 S.W. 2d at 116. Furthermore, "[t]he trial court has a great deal of discretion in determining whether the child fits within the abused or neglected category and whether the abuse or neglect warrants termination." *Id.*

That being said, the best interest of the child prong of the tripartite test is reviewed for abuse of discretion. *D.J.D. v. Cabinet for Health and Fam. Servs.*, 350 S.W. 3d 833, 837 (Ky. App. 2011). "Absent a showing that a decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles, a [trial]

---

[17] Kentucky Rules of Civil Procedure.

court's determination [regarding best interests of the child] will not be an abuse of discretion and will be sustained." *Id.*

III.     **ANALYSIS**

Father argues on appeal the evidence adduced at the TPR hearing does not satisfy any of the elements of KRS 625.090, and the family court's findings were "not supported by the record and rest instead on conclusory reasoning and subjective impressions untethered from the statutory requirements." Appellant's Brief at 19. We disagree.

**A. Abuse or Neglect**

On appeal, Father asserts the Cabinet failed to prove by clear and convincing evidence that Child was abused or neglected. However, Father's brief only focuses on the family court's independent findings of neglect under KRS 600.020(1)(a)(9), *i.e.* that the Father failed to make sufficient progress towards identified goals as set forth in his case plan that resulted in Child remaining committed to the Cabinet and in foster care for fifteen cumulative months out of forty-eight months. Father does not argue the family court erred in its other two independent findings of neglect under KRS 600.020(1)(a)4. or KRS 600.020(1)(a)8., nor does he argue the family court erred in finding Child was an abused or neglected child in the underlying JDNA action. Because the statute only requires the Cabinet establish *one* independent finding of neglect *or* that the child

-11-

had been previously adjudicated as an abused or neglected child, *see* KRS 625.090(1)(a)1., the family court's finding that Child was an abused or neglected child in the underlying JDNA action is sufficient. Thus, the trial court did not err in finding Child was an abused or neglected child.

### B. Statutory Factors

Under the tripartite test, before TPR can be ordered, the family court must find the existence of one of eleven statutory grounds under KRS 625.090(2). While father concedes the evidence fits one of those statutory grounds, specifically that Child was in Cabinet custody for the requisite period of time under KRS 625.090(2)(j),[18] Father argues that "the mere passage of time in foster care does not, standing alone, satisfy the Cabinet's burden of proof." Appellant's Brief at 16. Father further argues "the record . . . does not establish that the child's initial removal and resulting continued placement was attributable to abuse or neglect by [Father]" and because "the abuse or neglect that prompted the child's removal stemmed from the child testing positive for marijuana, the evidence suggests that such abuse or neglect was more likely perpetrated by the mother rather than [Father.]" Appellant's Brief at 16-17.

---

[18] "There is no dispute that the child was in the custody of the Cabinet for fifteen of the most recent [forty-eight] months." Appellant's Brief at 16.

Father's arguments regarding the initial reasons for removal are merely an attempt to relitigate issues in the underlying JDNA case from which he did not appeal. Furthermore, his argument that the "mere passage of time in foster care" does not satisfy KRS 625.090(2)(j) has been rejected by our Supreme Court.

In *Cabinet for Health and Family Services v. H.L.O.*, 621 S.W.3d 452, 464 (Ky. 2021), the Kentucky Supreme Court held "[t]he statute simply requires that the child be in foster care for 'fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights.'" All that is required is for the family court to correctly calculate the amount of time a child has been in the custody of the Cabinet prior to the petition for TPR. *Id.*

Because Father concedes Child had been in Cabinet custody for the requisite amount of time, the requirements of KRS 625.090(2)(j) were met. We need not delve into Father's arguments as to the other factors as "[t]he trial court only need find that *one* of the KRS 625.090(2) factors applies." *E.L.T. v. Cabinet for Health and Fam. Servs.*, 647 S.W.3d 561, 569 (Ky. App. 2022) (emphasis added). Thus, the family court did not err in finding the existence of at least one factor under KRS 625.090(2).

## C. Best Interests of the Child

Under the final prong of the tripartite test, the family court must find TPR is in the best interests of the child.  In determining whether TPR is in a child's best interests, KRS 625.090(3) directs the family court to consider six factors:[19]

> (a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;
>
> (b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;
>
> (c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;
>
> (d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;
>
> (e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

---

[19] We note the version of KRS 625.090(3) as it existed at the time the TPR petition was filed.  KRS 625.090(3) was amended in 2025, though none of those amendments were dispositive to this appeal.  2026 Ky. Acts ch. 26 § 6 (eff. Jun. 27, 2025).

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

Father argues the family court misapplied these factors and "[t]he record shows that, prior to removal, [Father] provided a safe, stable home for the child, developed a loving bond with her, appropriately attended to her medical and mental needs, and materially complied with the requirements of his case plan to bring about unification." Appellant's Brief at 18. Ultimately, Father argues "[t]he record does not support a conclusion that the child's well-being would be enhanced by the permanent severance of this parental relationship." *Id.*

We disagree. The record shows the family court carefully considered and applied the evidence adduced at the TPR hearing to each factor under KRS 625.090(3). We set forth the trial court's findings below:

> There was no evidence presented by a qualified mental health professional that the Father suffers from a mental illness or condition, or that a mental illness or condition prohibits him from meeting his responsibilities as this child's parent. [KRS 625.090(3)(a).] The court is mindful that the Father is receiving [SSDI] benefits for depression. Still, he is not seeking or receiving mental health care. There has been no evidence that the Father's mental condition would prohibit him from adequately parenting the child if he were compliant with his case plan.
>
> The court has further considered any acts of abuse or neglect that have been perpetuated upon this child and upon other children of the [Father.] The court finds that the Father has abused or neglected this child. Based upon

-15-

clear and convincing evidence, the court makes simultaneous findings herewith that the Father has perpetrated acts of abuse or neglect upon this child. The Father has neglected or abused this child by his failure or refusal to implement vital skills on his case plan resulting in the child remaining committed to the Cabinet in excess of fifteen cumulative months out of the forty-eight months preceding the filing of this petition, by his continuous or repeated failure or refusal to provide essential parental care and protection for the child considering the child's age, and by his lack of provision of the child's adequate care, supervision, food, clothing, shelter, and education or medical care when financially able to do so. [KRS 625.090(3)(b).]

The court has considered whether the Cabinet made reasonable efforts to reunify the child with this parent and finds by clear and convincing evidence that [the Cabinet] has done so. The court recognizes that the history of efforts made by the Cabinet has not been outstanding. The Cabinet has not always made sound decisions in its dealings with the Father. However, the efforts made were reasonable given the Father's circumstances and lack of cooperation[.] [T]he Father has been provided more than ample time to complete his case plan. Services are available and were provided to the Father; no known barrier to his completion of his case plan exists. Even after the child's permanency goal was changed to adoption and reasonable efforts were waived (over one year ago), the Cabinet continued to offer services to the Father through the date of this trial. The court notes that throughout the underlying juvenile action, the Father was provided detailed information as to the necessary aspects of the case plans[,] [and] he was aware of how to contact his caseworker and the child (through his caseworker). However, the Father failed to implement skills that were vital to the safe return of the child without valid justification for such failure. The Father's conduct and failure to incorporate the skills he was taught, as previously discussed, are uncontroverted. His actions and

-16-

inactions have resulted in the child's extended commitment to the Cabinet. Thus, the court finds that there are no additional services that could be provided which would enable the child to live safely in the Father's care for a significant period of time. [KRS 635.090(3)(c)]

The court has considered the Father's efforts and adjustments in his circumstances, his conduct, and his conditions in determining that it would not be in the child's best interests to place the child in the Father's care within a reasonable time, considering the child's age. The court notes that, the Father has had ample time to integrate the skills of health parenting. Now, over one year after the permanency goal was changed and nearly three years since the underlying action began, the Father has made little to no efforts to modify his circumstances, to rehabilitate his inability to provide a proper and safe home, to maintain mental health care and anger management, or to control the vitriol directed at the Mother. He has failed to do so, knowing that these items were central to reunification and were paramount to safety and adequately providing for the child. The court in which the underlying juvenile action was adjudicated waived reasonable efforts from the Cabinet over a year ago. . . . The Father's situation and progress remain largely unchanged since that time.

There have been no barriers (other than those he created himself) to application of the skills identified in the case plan; he has not requested additional assistance and has even defiantly refused to complete some of the tasks (e.g., civility toward Mother). The Father's actions, inactions, and failure to progress in demonstrating the skills set forth in the case plan have caused this child to remain in the custody of the Cabinet for a total of 18 months at the time the petition was filed, all of which occurred within the 48 months preceding the filing of this petition. This child has been in the custody of the Cabinet for over 18% of her entire life. In addition to findings previously made, the court finds that the Father has failed to establish his ability or his desire to meet the child's

needs for a significant period or to provide a safe and stable home for the child in which the child's needs could be met for a substantial period of time. [KRS 625.090(3)(d)].

The court has also considered the physical, emotional, and mental health of the child and prospects for improvement if the Father's parental rights are terminated. Clear and convincing evidence indicates that the prospects for the child's continued improvement are increased by the termination of the Father's rights. According to all evidence, the child's condition has improved while in foster care. The evidence establishes that the child's prospects for improvement would be enhanced if the Father's parental rights are terminated.

Moreover, there was no evidence that the child's prospects for improvement would be improved if the Father's rights were NOT terminated. The evidence establishes that the child does not desire to visit with the Father, that she does not respond to the Father, and that she avoids and refuses any physical contact with him. The Father has not provided the child with the required emotional, physical, mental, or financial support she needs. Given his attitude and past behavior, the court questions whether the Father even appreciates what the child needs.

The physical, emotional, and mental health of the child are best served by termination of the rights of the Father. The child's improvements while in Cabinet care are evidence of and indicate that the prospects for improvement and adoption are good if the Father's rights are terminated. Adoption would provide the child with an assurance that her needs will be met, with stability, and with permanency and safety. Until such time as adoption could be accomplished, the Cabinet has facilities for the child and is willing to accept the care, custody, and control of the child. The child's Guardian *ad litem* and the child's

Mother concur that termination is in the child's best interests.  [KRS 625.090(3)(e).]

The court has also considered the Father's payment or failure to pay a reasonable portion of substitute physical care and maintenance and his provision for the child's necessities.  The Father has not consistently remitted financial support for this and has failed to establish a justifiable reason for not doing so.  At the time of this trial, he acknowledged that he had incurred an arrearage in the payment of child support.  [KRS 625.090(3)(f).]

R. at 439-41.

We conclude the family court's factual findings as set forth above were supported by substantial evidence.  Balancing the factors under KRS 625.090(3), the family court did not abuse its discretion in finding TPR was in Child's best interest.

## IV.  CONCLUSION

While it is undisputed that Father completed many tasks under his case plan, our task is not to determine whether we would come to a different conclusion than the family court.  Rather, our task is to determine whether the family court's judgment was supported by substantial evidence.  Indeed, as noted by the family court, by the time of the TPR hearing, Child had been out of her parents' care for 18 percent of her life.  R. at 426.  We are satisfied that the family court's conclusions are sound and we agree Child needs and deserves permanency. We view any remaining contentions of error as moot, unpersuasive, unpreserved,

-19-

or without merit.  Thus, for the foregoing reasons, the judgment of the Calloway

Family Court is affirmed.


ALL CONCUR.



BRIEF FOR APPELLANT:

Rebecca Reynolds
Murray, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky